**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-558-KDB
3:24-CV-559-KDB**

IN RE:                                                                    )
                                                                          )        APPEAL FROM
DBMP LLC,[1]                                                              )        USBC WDNC
                                                                          )        Case No. 3:20-30080
                    Debtor.                                               )
                                                                          )
_____                                   )
                                                                          )
THE ESTATE OF PETER L. BERGRUD; AND                                       )
MICHAEL N. AND ANN HERLIHY                                                )
                                                                          )
                    Plaintiffs-Appellants,                               )
                                                                          )
v.                                                                        )
                                                                          )
DBMP LLC,                                                                 )
                                                                          )
                    Defendant-Appellee.                                   )
_____                                   )

## NOTICE OF APPEAL TO UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

PLEASE TAKE NOTICE that The Estate of Peter L. Bergrud and Michael N. and Ann Herlihy (collectively, the "Appellants"), by and through the undersigned counsel, pursuant to 28 U.S.C. §158(d)(1), hereby appeal to the United States Court of Appeals for the Fourth Circuit the District Court's *Order*[2] [Doc. No. 14] entered on October 28, 2024 (the "Order"). A copy of the Order is attached hereto as **Exhibit A**.

---

[1] The last four digits of the Debtor's taxpayer identification number are 8817. The Debtor's address is 20 Moores Road, Malvern, Pennsylvania 19355.

[2] The Order is simply called "Order", and the docket entry is as follows: ORDER: Appellants' appeal of the denial of their Motions for Relief from the Automatic Stay (DBMP Bankr. Doc. Nos. 2753, 2755) are DENIED and the Bankruptcy Court's rulings (DBMP Bankr. Doc. Nos. 2808, 2809) are AFFIRMED.

PLEASE TAKE FURTHER NOTICE that the names of all parties to the Order appealed from, and the names, addresses, and telephone numbers of their respective attorneys, are as follows:

**Appellants:**

Michael N. Herlihy
Ann Herlihy
The Estate of Peter L. Bergrud

**Counsel for Appellants:**

Thomas W. Waldrep, Jr.
Chris W Haaf
Waldrep Wall Babcock & Bailey PLLC
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Telephone: (336) 717-1280
Email: notice@waldrepwall.com

Jonathan Ruckdeschel
The Ruckdeschel Law Firm, LLC
8357 Main Street
Ellicott City, Maryland 21043
Telephone: (410) 750-7825
Email: ruck@rucklawfirm.com

Clayton L. Thompson
John Louis Steffan IV
Maune Raichle Hartley French & Mudd, LLC
150 W. 30th Street, Suite 201
New York, NY 10001
Telephone: (800) 358-5922
Email: CThompson@mrhfmlaw.com

**Appellee:**

DBMP LLC

**Counsel for Appellee:**

C. Kevin Marshall

Jones Day - Washington
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
Email: ckmarshall@jonesday.com

Garland Stuart Cassada
Robinson, Bradshaw & Hinson, P. A.
101 North Tryon Street
Suite 1900
Charlotte, No 28246
Telephone: (704) 377-8317
Email: gcassada@robinsonbradshaw.com

Gregory M. Gordon
Jones Day
2727 N. Harwood
Dallas, TX 75201
Telephone: (214) 220-3939
Email: gmgordon@jonesday.com

Jeffrey B. Ellman
Jones Day
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
Telephone: (404) 822-0918
Email: jbellman@jonesday.com

Respectfully submitted this the 29th day of October, 2024.

**WALDREP WALL BABCOCK & BAILEY PLLC**

/s/  *Thomas W. Waldrep Jr.*
Thomas W. Waldrep Jr. (NC State Bar No. 11135)
Chris Haaf (NC State Bar No. 46077)
Diana Santos Johnson (NC State Bar No. 40050)
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Telephone: 336-717-1280
E-mail: notice@waldrepwall.com

-and-

**THE RUCKDESCHEL LAW FIRM, LLC**

*/s/ Jonathan Ruckdeschel*
Jonathan Ruckdeschel (Maryland, CPF:  9712180133)
8357 Main Street
Ellicott City, Maryland 21043
Telephone: (410) 750-7825
Facsimile: (443) 583-0430
Email: ruck@rucklawfirm.com


-and-


**MAUNE RAICHLE HARTLEY FRENCH &
MUDD, LLC**

*/s/ Clayton L. Thompson*
Clayton L. Thompson (NY Bar No. 5628490)
John Louis Steffan IV (Missouri Bar No. 64180)
150 W. 30th Street, Suite 201
New York, NY 10001
Telephone: (800) 358-5922
Email: CThompson@mrhfmlaw.com

*Counsel for Appellants*

# EXHIBIT A

Order

Case 3:24-cv-00558-KDB    Document 16    Filed 10/29/24    Page 5 of 16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:24-CV-00558-KDB

|  |  |
|---|---|
| MICHAEL N. HERLIHY, ANN HERLIHY AND THE ESTATE OF PETER L. BERGRUD, | |
| **Appellants,** | |
| v. | **ORDER** |
| DBMP LLC, | |
| **Appellee.** | |

**THIS MATTER** is before the Court on a consolidated appeal of rulings of the Bankruptcy Court denying the Appellants' Motions for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) in Debtor DBMP LLC's bankruptcy. (*See In re DBMP LLC*, No. 20-30080 (Bankr. W.D.N.C.) ("DBMP Bankr.") Doc. Nos. 2808, 2809, 2753, 2755, 2757).

Appellants are two of tens of thousands of plaintiffs who filed asbestos-related tort claims against building products manufacturer CertainTeed Corporation ("CTC") and/or its various subsidiaries, predecessors, successors or related companies. In 2019, CTC underwent a "divisional merger" under Texas law in which two new companies, DBMP and CertainTeed LLC, were created with the intent of segregating all of CTC's asbestos-related liabilities in DBMP, where the claims could be collectively resolved in a bankruptcy. All of CTC's employees and nearly all of CTC's other assets and liabilities (i.e., its entire ongoing business) were retained in CertainTeed LLC ("CertainTeed"). DBMP and CertainTeed then executed a "Funding Agreement," in which CertainTeed purportedly agreed to fund DBMP's bankruptcy expenses and reorganization, including the cost of resolving the asbestos-related claims. In the ensuing DBMP Chapter 11

1

bankruptcy filed three months later, Appellants and all the other asbestos-related claimants' state law tort claims were automatically stayed under Section 362 of the bankruptcy code and, over vigorous objection, the Bankruptcy Court entered a preliminary injunction prohibiting the claimants from bringing the same asbestos-related claims against CertainTeed and its distributors.

At the outset, it is important to clarify what issues are and are not before the Court in this appeal. Appellants have appealed the denial of their request to be relieved of the automatic stay that prevents them from pursuing their asbestos claims in state court. The Bankruptcy Court denied the Appellants' motions based on its weighing of the factors described in *In re Robbins*, 964 F.2d 342 (4th Cir. 1992), the governing authority in this Circuit on bankruptcy "lift-stay" motions. Whether the Bankruptcy Court abused its discretion in applying *Robbins* is the narrow issue this Court must decide. Numerous other issues are pending in the Bankruptcy Court, including the question of whether the division of CertainTeed Corporation's assets in the "divisional merger" was a fraudulent transfer, and other broad claims of wrongdoing. Those issues are not now before this Court and their merits will not be resolved in this appeal.

As to the merits of the appeal, for the reasons discussed below, the Court finds that the Bankruptcy Court did not abuse its discretion in denying Appellants' motion to lift the automatic stay. Therefore, this appeal will be **DENIED** and the decision of the Bankruptcy Court **AFFIRMED**.

## I. LEGAL STANDARD

When a bankruptcy petition is filed, most judicial actions against the debtor commenced before the filing of the petition are automatically stayed. *See* 11 U.S.C. § 362(a)(1). The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her

obligations. According to section 362(d), the bankruptcy court may lift the stay "for cause." Because the Code provides no definition of what constitutes "cause," courts must determine when relief is appropriate on a case-by-case basis. *In re Robbins*, 964 F.2d at 345. Bankruptcy judges have broad discretion in determining what constitutes sufficient cause to grant relief from stay under section 362(d)(1). *In re Morgan*, 659 B.R. 461, 470 (Bankr. D.S.C. 2024); *see also Robbins*, 964 F.2d at 345; 3 *Collier on Bankruptcy* § 362.07 [1] (16th ed. 2024).

When a district court reviews a bankruptcy court's decision to decline to lift an automatic stay, the district court acts as an appellate court, reviewing the bankruptcy court's findings of fact for clear error and conclusions of law *de novo. See Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 399 (4th Cir. 1992). Further, a bankruptcy court's discretionary determination on whether to lift an automatic stay will be overturned only upon a showing of abuse of that discretion. *In re Ramkaran*, 315 B.R. 361, 363–64 (D. Md. 2004); *see Claughton v. Mixson,* 33 F.3d 4, 5 (4th Cir.1994) ("We will reverse a decision to lift the automatic stay 'for cause' only when an abuse of discretion has occurred.") (citing *In re Robbins,* 964 F.2d at 345).

An abuse of discretion occurs when the bankruptcy court relies upon clearly erroneous findings of fact or uses an erroneous legal standard. *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4th Cir. 1999). However, even if a bankruptcy court applies the correct legal principles to adequately supported facts, the discretion of the bankruptcy judge "is not boundless and subject to automatic affirmance." *Id.* (citing *Wilson v. Volkswagen of Am., Inc.,* 561 F.2d 494, 506 (4th Cir. 1977)). "This court is obligated to review the record and reasons offered by the [bankruptcy] court and to reverse if the 'court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* (quoting *Wilson,* 561 F.2d at 506).

## II. FACTS AND PROCEDURAL HISTORY

The relevant facts and initial procedural history of this complex bankruptcy are described in detail in the Bankruptcy Court's August 8, 2021, FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING ORDER: (I) DECLARING THAT THE AUTOMATIC STAY APPLIES TO CERTAIN ACTIONS AGAINST NON-DEBTORS, (II) DENYING MOTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO LIFT THE STAY, AND ALTERNATIVELY (III) PRELIMINARILY ENJOINING SUCH ACTIONS. DBMP Bankr. Doc. No. 972, 2021 WL 3552350 (Bankr. W.D.N.C. Aug. 11, 2021). While the parties certainly characterize the facts differently, they acknowledge that the Bankruptcy Court's recitation of the fundamental facts of CTC's corporate restructuring and CertainTeed's subsequent bankruptcy are not clearly erroneous.[1] Therefore, the Court affirms and adopts the Bankruptcy Court's statement of the facts (which are very briefly summarized above). *Id*. at pp. 9-33, 2021 WL 3552350 at \*\*4-18.

Following the Bankruptcy Court's ruling on the initial "lift-stay" motions and Preliminary Injunction, the legal representatives for the current and future asbestos claimants filed additional adversary proceedings in the bankruptcy case: (a) a proceeding seeking substantive consolidation of DBMP with CertainTeed or, in the alternative, reallocating the asbestos liabilities of DBMP to CertainTeed; (b) a proceeding asserting intentional and constructive fraudulent conveyance claims related to the corporate restructuring, which, among other things, alleged that the

---

[1] Appellants contend that to the extent the Bankruptcy Court's prediction that numerous other asbestos claimants would seek to take advantage of a ruling lifting the automatic stay for the Appellants is a "finding of fact," then it is clearly erroneous. The Court, however, views that predictive judgment of the Bankruptcy Court not as a factual finding, but rather as the court's consideration of the *Robbins* factor of "judicial economy," which is subject to the "abuse of discretion" standard of review.

restructuring had rendered DBMP insolvent; and (c) a proceeding asserting breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and civil conspiracy in connection with the corporate restructuring. Discovery in the first two proceedings is ongoing, while the third is stayed pending resolution of the fraudulent transfer allegations. Also, the Bankruptcy Court has approved a process for estimating DBMP's aggregate liability for purposes of negotiating, formulating, and confirming a Chapter 11 plan, and has ordered the parties to mediation to negotiate the possible resolution of the Chapter 11 case.

On April 18, 2024, the Estate of Peter Bergrud and Michael and Ann Herlihy filed Motions for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d). DBMP Bankr. Doc. Nos. 2753, 2755. The Bankruptcy Court denied the motions on May 28, 2024, for reasons stated during a hearing on May 23, 2024. *Id*. at Doc. Nos. 2808, 2809; Doc. No. 5 (Appendix) at 854, 862-874 (applying the balancing test of *Robbins* and finding, in part, that relief from stay would as a practical matter improperly lead to dismissal of the bankruptcy when thousands of other similarly situated asbestos claimants also sought relief from the stay). Appellants timely appealed and the motions – argued together below – have been consolidated on appeal. Following full briefing, the Court held oral argument on October 24, 2024, and the appeal is now ripe for decision.

### III.    DISCUSSION

The factors which must be considered in deciding whether to lift the automatic stay as to any creditor or claim are well established in the Fourth Circuit.[2] *See In re Robbins*, 964 F.2d at

---

[2] At oral argument, Appellants argued that *Robbins* is inapplicable to their motions to lift the automatic stay because "bad faith" was not at issue in *Robbins*. However, nothing in Robbins suggests that it cannot or should not be applied to motions where "bad faith" might be considered. On the contrary, *Robbins* states that the factors it describes are to be applied broadly, to wit, "courts must determine when discretionary relief [for 'cause'] is appropriate on a case-by-case basis. . . The factors that courts consider in deciding whether to lift the automatic stay include:…" *In re*

5

345. Courts should consider: (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court. *Id.* Overall, the court must "balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Id.*

In the Bankruptcy Court's 2021 ruling on the asbestos claimants' request to lift the automatic stay (which the court referenced and incorporated into its ruling on Appellants' lift-stay motions), the court weighed the *Robbins* factors. *See* Doc. No. 5 at 223-35. "Applying those factors and striking that balance," it concluded the stay motion:

> should be denied because: (a) prejudice to the estate would result if the stay is lifted and this prejudice significantly outweighs any hardship to the Debtor's asbestos claimants; (b) allowing the tort system to be re-flooded with asbestos cases at the same time the Chapter 11 Case remains pending would not serve judicial economy; and (c) the fact that asbestos claims arise under state law does not support a modification of the stay because it necessarily involves individual creditors liquidating their claims against the Debtor outside of the bankruptcy proceeding, asserting estate causes of action for their individual benefit, and thwarting any attempt to globally and permanently resolve asbestos claims in a single forum."

*Id.* at 224.

More specifically, as to the prejudice to the Debtor's estate, the Bankruptcy Court found that lifting the stay would deplete estate resources through increased costs and irreparably harm the prospects for reorganization:

---

*Robbins*, 964 F.2d at 345. Therefore, *Robbins* provides the governing framework in this Circuit for resolving motions to lift the automatic stay, including those which arguably involve "bad faith."

> [A]sbestos claims would not be resolved globally in a single forum; they would be litigated piecemeal in hundreds of state and federal courts across the country. The ability to treat equitably and consistently all similarly situated claimants through a section 524(g) consensual plan of reorganization would be foreclosed; and the Debtor's ability to achieve any type of a successful reorganization would be substantially impaired, if not eliminated."

*Id.* at 225. Indeed, the court found that allowing the litigation (and ultimate liquidation) of thousands of asbestos claims in the tort system "would amount to an effective dismissal of the Chapter 11 Case without satisfying the Fourth Circuit's stringent *Carolin* dismissal standard" (which is discussed further below). *Id.*

In comparison, the bankruptcy court found that the hardship to the asbestos claimants was relatively modest because claimants could continue to pursue other defendants in the tort system, who collectively paid claimants far more than they would likely receive from CertainTeed (historically, "Old CertainTeed paid less than 4% of the total recoveries received by the typical asbestos claimants whose claims they resolved."). *Id.* at 228. Also, the court found that it was likely given the "funding agreement" that claimants would receive payment in the bankruptcy and that "delay in payment due to bankruptcy is not a reason to grant relief from stay."

Moreover, with respect to judicial economy, the court held that lifting the stay would mean "dumping more than 60,000 asbestos cases back into the tort system. It would result in piecemeal litigation of asbestos cases in multiple state and federal courts across the country even as the Debtor is attempting to resolve those same claims in this Court." *Id.* at 231. Thus, it concluded that "[a] case dump of this magnitude would not promote judicial economy. It would be the furthest thing from judicial economy."[3]

---

[3] Appellants argue that their motion to lift the stay implicates only themselves, not the tens of thousands of other asbestos claimants in the bankruptcy. Like the Bankruptcy Court, this Court disagrees and declines to ignore the "real world" consequences of lifting the stay as to Appellants.

Finally, the bankruptcy court concluded that the fact that the asbestos claims arise under state law cannot, standing alone, justify lifting the stay. First, the court noted, "[a]lmost all claims against a bankruptcy debtor arise under state law." *Id*. Also, more specific to the context of asbestos claims, the court noted that:

> Section 524(g) of the Bankruptcy Code provides a debtor with a unique mechanism to resolve its asbestos liabilities in a single forum through a consensual plan of reorganization process. Indeed, Congress enacted section 524(g) to address precisely the type of state law-based asbestos claims faced by the Debtor. To lift the stay as to all asbestos personal injury claims as requested would contravene the clear purpose of section 524(g) of the Bankruptcy Code.

*Id*. at 231-32. Accordingly, the state law nature of the asbestos claimants' claims was found insufficient to lift the automatic stay.

This Court has carefully reviewed the Bankruptcy Court's *Robbins* analysis and concludes that the court did not abuse its discretion in balancing the relevant factors. It is not unreasonable to conclude that DBMP's bankruptcy estate would be harmed by allowing thousands of asbestos claimants to proceed in state court while the bankruptcy "continues" (to the extent that would even be possible). Nor is the Bankruptcy Court's finding that claimants' delay in receiving comparatively modest payments does not outweigh DBMP's likely harm clearly incorrect. Moreover, the court's conclusions that lifting the stay would not promote judicial economy and that the state law nature of asbestos claims does not justify a stay are not outside the bounds of the court's discretion. Again, this Court's role is not to decide what it might have done in the first instance (although that is not to suggest it would have ruled differently), but rather only to ensure that the Bankruptcy Court has not abused its discretion, which it has plainly not done here.

---

If the stay were lifted, it would only be a matter of time (and likely not much time) until numerous other similarly situated claimants inundated the Bankruptcy Court with lift-stay motions, which the court would be obligated to grant to be consistent.

Appellants' arguments in both the Bankruptcy Court and this Court do not focus on balancing the *Robbins* factors. Rather, they contend that DBMP's lack of good faith in filing the bankruptcy is, standing alone, sufficient "cause" to lift the stay and it was plain legal error not to rule directly on the Debtor's bad faith.[4] In support of their position, they rely almost exclusively on *Carolin v. Miller*, 886 F.2d 693 (4th Cir. 1989).[5] Yet, *Carolin* does not reach the holding Appellants suggest, much less require that the Bankruptcy Court abandon the appropriate *Robbins* analysis.

In *Carolin*, the court decided the question of whether a debtor's lack of good faith "may" constitute cause for dismissal of a bankruptcy petition, and the court ultimately held that "we agree with those courts that require that *both* objective futility and subjective bad faith be shown in order to warrant dismissals for want of good faith in filing." *Id*. at 700-01. In reaching that conclusion, the court discussed the code's provision governing relief from the "automatic stay," 11 U.S.C. §

---

[4] Appellants also contend that enforcing the automatic stay provision will deny them their constitutional and statutory rights to a jury trial. However, while the application of the automatic stay may well *delay* a jury trial on their claims, it does not preclude a jury trial in accordance with the applicable law. Indeed, Appellee stated at oral argument (without contradiction by Appellants) that jury trials – although rare – most often occurred later in bankruptcy proceedings.

[5] In their Reply brief and at oral argument, Appellants cited *In re Dixie Broadcasting*, 871 F.2d 1023, 1029 (11th Cir. 1989) as holding that the bankruptcy court is required to consider whether the bankruptcy petition was filed in "bad faith" and that a finding of "bad faith" requires the granting of a motion to lift the automatic stay. Putting aside the fact that *Dixie* is not binding on this Court (as are *Robbins* and *Carolin*), the Court in *Dixie* does not hold that a bankruptcy court is *required* to consider "bad faith"; rather, in that case the court found that the District Court did not abuse its discretion in considering and finding "bad faith" sufficient to justify lifting the automatic stay (where the petition was filed only when an adverse ruling in a long running state court contract litigation was imminent and "[i]t seems clear that Dixie entered bankruptcy to get out of its bad deal"). *Id*. at 1027. Here, in contrast, to the extent the Bankruptcy Court considered "bad faith," it concluded after a review of all relevant factors to exercise its discretion not to lift the stay. Thus, *Dixie* is not inconsistent with the ruling here, but instead simply reflects the application of a different court's judgment and discretion to different facts to reach a different result.

9

Case 3:24-cv-00556-KDB    Document 64    Filed 10/29/24    Page 14 of 16

362(a), which it noted "also suggests a bankruptcy court's authority to dismiss a Chapter 11 petition for want of good faith." *Id*. at 699.

However, in discussing that automatic stay provision, the *Carolin* court specifically referenced the situation (present in *Carolin*) "where a debtor has but one significant asset and a single creditor has a secured claim against that asset, [so] 'for cause' relief from the stay in favor of such a creditor would normally entail dismissal in short order of the entire case." *Id*. In "such circumstances," the court said, the statute "inferentially permits inquiry into the debtor's good faith in commencing the case as a whole." *Id*. Therefore, not only is the *Carolin* discussion of "good faith" related to relief from an automatic stay clearly "dicta" (in a case involving dismissal of a petition), the court's comment specifically describes situations – like that found by the bankruptcy court here – in which the lifting of the stay would be tantamount to a dismissal of the petition, and thus require a showing of both objective futility and subjective bad faith under the *Carolin* analysis.

Also, as further evidence that *Carolin* does not mandate the result urged by Appellants, the two cases cited in the *Collier on Bankruptcy* section cited in *Carolin*'s automatic stay discussion – *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984) and *In re Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir. 1986) – each require both subjective bad faith and objective futility before granting relief from the stay. *See Carolin*, 886 F.2d at 699-700. So, it is incorrect to read *Carolin* as holding that in ruling on a motion to lift a stay, a bankruptcy court must decide if a petition was filed in bad faith and if it so finds then it must lift the stay. On the contrary, while "bad faith in filing for bankruptcy is sometimes grounds for lifting an automatic stay under Section 362, [] a finding of bad faith alone does not constitute *per se* cause for relief from a stay." *In re Ramkaran*, 315 B.R. 361, 363–64 (D. Md. 2004). So, to be clear, the Bankruptcy Court *could* have considered DBMP's alleged "bad faith" among its balancing of all the *Robbins*

factors, but was not required to do so under *Carolin*. However, if, as the Bankruptcy Court concluded here, granting the automatic stay would in practical effect amount to a dismissal of the bankruptcy petition, it was required under *Carolin* to find both objective futility and subjective bad faith to grant relief from the stay related to "bad faith." The Bankruptcy Court thus correctly applied *Carolin*.

In summary, the Court concludes that the Bankruptcy Court did not abuse its discretion under *Robbins* in its balancing of the harm to the Debtor of granting relief from the automatic stay with the harm to the Appellants in light of all the circumstances and further committed no error of law in its alternate analysis[6] under *Carolin*. Therefore, the Court will deny the Appellants' appeal and affirm the ruling of the Bankruptcy Court.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Appellants' appeal of the denial of their Motions for Relief from the Automatic Stay (DBMP Bankr. Doc. Nos. 2753, 2755) are **DENIED** and the Bankruptcy Court's rulings (DBMP Bankr. Doc. Nos. 2808, 2809) are **AFFIRMED**. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 28, 2024

Kenneth D. Bell
United States District Judge

---

[6] As discussed in detail above, the Bankruptcy Court's application of *Robbins* – apart from any discussion of *Carolin* and the effective dismissal of the bankruptcy if the asbestos claimants are allowed to liquidate their claims in state court – is wholly sufficient to support the denial of the motion for relief from stay.

11